UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| J&J SPORTS PRODUCTIONS, INC., *As Broadcast Licensee of the May 5, 2007 De La Hoya/Mayweather Program,*  Plaintiff,  v.  KRASSIMER ORACHEV, *Individually and as Officer, Director, and Shareholder and/or Principal of* 256 BUFFALO AVE, INC., *d/b/a* WILD BULL STEAKHOUSE, *a/k/a* THE WILD BULL STEAKHOUSE & SALOON; 256 BUFFALO AVE, INC., *d/b/a* WILD BULL STEAKHOUSE, *a/k/a* THE WILD BULL STEAKHOUSE & SALOON,  Defendants. | Civil Action No. 08-1229 (KSH)  **OPINION** |

**Katharine S. Hayden, U.S.D.J.**

This matter comes before the Court upon defendants' motion to vacate a default judgment entered against them. Plaintiff opposes the motion, but for the reasons stated below, the Court finds that the present circumstances warrant vacatur. The motion is therefore granted.

**I.**

The facts of this case are straightforward and essentially undisputed. Plaintiff J&J Sports Productions, Inc. ("J&J") is a California corporation that obtained a license to transmit the May 7, 2007 "De La Hoya/Mayweather Program" (the "Program"), a professional boxing event, via closed circuit television and encrypted satellite signal to various pay-per-view purchasers. Compl. ¶¶ 5, 12. Defendant Krassimer Orachev is a New Jersey citizen and is the president of

1

co-defendant 256 Buffalo Ave, Inc., d/b/a Wild Bull Steakhouse, a/k/a The Wild Bull Steakhouse & Saloon ("Wild Bull"), a New Jersey business entity.  Compl. ¶¶ 6-10; Certification of Krassimer Orachev ("Orachev Cert.") ¶ 1.  Before the Program aired, the parties entered into sublicense negotiations for the purpose of broadcasting the event at Wild Bull, but ultimately the $2,350.00 that J&J requested was too high a price for Orachev, and no sublicense was granted.  Orachev Cert. ¶ 5.

J&J filed a complaint in this Court on March 11, 2008 [D.E. # 1], alleging that despite having not sublicensed the Program to Wild Bull, defendants, using "an illegal cable converter box or device to intercept [J&J's] broadcast," "unlawfully intercepted, received and/or de-scrambled said satellite signal[,] and . . . exhibit[ed] the Program at [Wild Bull] . . . willfully and for purposes of direct or indirect commercial advantage or private financial gain."  Compl. ¶¶ 15-16.  J&J seeks relief under 47 U.S.C. §§ 553 and 605, which prohibit the unauthorized reception, interception, transmission, publication, and exhibition of communications such as the Program.  Compl. ¶¶ 17-28.  Jurisdiction and venue are proper.  28 U.S.C. §§ 1331, 1391.

J&J returned the summons served upon defendants as properly executed on March 25, 2008 [D.E. # 4, 5], and when defendants did not respond, J&J requested the entry of default on April 30, 2008 [D.E. # 6].  The Clerk of the Court entered default on May 8, 2008 [D.E. # 7], and J&J thereafter moved for default judgment on June 24, 2006 [D.E. # 9].  On July 31, 2008, the Court granted the motion and entered a default judgment in the amount of $31,246.75 [D.E. # 13].  On April 14, 2009, defendants moved to vacate the default judgment under Rule 60(b) of the Federal Rules of Civil Procedure, and counsel entered an appearance on their behalf the next day [D.E. # 15, 16].

Defendants admit the following:  (1) that they did not obtain a sublicense from J&J to

broadcast the Program; (2) that despite this, the Program signal was somehow transmitted to Wild Bull; (3) that they broadcast the Program without notifying J&J; and (4) that they are therefore liable to J&J for proper compensation.  Defendants assert that they aired the Program "inadvertently (and perhaps foolishly) without seeking consent from or providing compensation to J&J," but deny taking concerted action to intercept plaintiff's signal.  Def. Br. at 1.  Orachev asserts that he speaks and understands English poorly, which contributed to his dilatory conduct.  Orachev Cert. ¶ 3.  He contends that the amount of the default judgment entered is grossly unfair and disproportionate to adequate damages.  Orachev Cert. ¶¶ 6-8.

## II.

Rule 60(b) of the Federal Rules of Civil Procedure provides the mechanism for vacating a previously entered default judgment.  It states in pertinent part that "[o]n motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons:  (1) mistake, inadvertence, surprise, or excusable neglect; [or] . . . (6) any other reason that justifies relief."  Fed. R. Civ. P. 60(b).  It is unclear whether defendants move under both subparagraphs (1) and (6), or only under the latter; J&J argues that relief under either is inappropriate.  Because Rule 60(b)(6) applies only where the other five subparagraphs do not, *see Medunic v. Lederer*, 533 F.2d 891, 893 (3d Cir. 1976), the Court addresses both subparagraphs below.

### A.

In reviewing a motion to vacate a default judgment under Rule 60(b)(1), the Court applies a balancing test in which it must consider the following three factors:  (1) whether the plaintiff will be prejudiced if the default judgment is set aside; (2) whether the defendant has a meritorious defense; and (3) whether the defaulting defendant's conduct is excusable or culpable.

3

*Gold Kist, Inc. v. Laurinburg Oil Co.*, 756 F.2d 14, 19 (3d Cir. 1985) (collecting cases).[1] Of these factors, the existence or absence of a meritorious defense exists is a threshold consideration. *Resolution Trust Corp. v. Forest Grove*, 33 F.3d 284, 288 (3d Cir. 1994); *Harad v. Aetna Cas. & Sur. Co.*, 839 F.2d 979, 982 (3d Cir. 1988). As plaintiff indicates, defendants do not proffer a viable meritorious defense; in fact, they admit liability. A meritorious defense is acceptable when "allegations of defendant's answer, if established on trial, would constitute a complete defense to the action." *Tozer v. Charles A. Krause Milling Co.*, 189 F.2d 242, 244 (3d Cir. 1951). Because defendants have no complete defense to the action here, relief under Rule 60(b)(1) is inappropriate.

B.

Despite its conclusion that Rule 60(b)(1) does not support vacatur of the default judgment, the Court must keep in mind the Third Circuit's "operative premise" that it "does not favor defaults and . . . in a close case doubts should be resolved in favor of setting aside the default and reaching a decision on the merits." *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 197 (3d Cir. 1984) (Garth, J., dissenting) (quoting *Gross v. Stereo Component Sys., Inc.*, 700 F.2d 120, 122 (3d Cir. 1983)).

---

[1] Some cases within this district appear to collapse the balancing analysis under both subparagraphs (b)(1) and (b)(6). *See, e.g., Cablevision of N.J., Inc. v. Pedolsky*, No. 03-107, 2007 U.S. Dist. LEXIS 16632, at *3-4 (D.N.J. Mar. 8, 2007). While the Court certainly should consider the factors constituting the balancing test, Rule 60(b)(6) is reserved for extraordinary circumstances review and, as such, is not readily amenable to inflexible legal frameworks. The proper analysis, rather, is to apply the balancing test set forth by the Third Circuit to subparagraph (b)(1), and simply question "whether an extreme and unexpected hardship will result" under subparagraph (b)(6). *See Budget Blinds, Inc. v. White*, 536 F.3d 244, 257 & n.15 (3d Cir. 2008) (discussing *Feliciano v. Reliant Tooling Co.*, 691 F.2d 653, 656 (3d Cir. 1982), and stating that "[a]lthough *Feliciano* suggests that the three-part test might apply to Rule 60(b)(6), it does not make this a part of its holding. Thus, we do not think that *Feliciano* stands for the proposition that the three-part test is sufficient to guide a Rule 60(b)(6) inquiry."); *see also M.N.H. Exps. v. B.A.T. Wear, Inc.*, No. 06-3874, 2008 U.S. Dist. LEXIS 61071, at *5 (D.N.J. Aug. 4, 2008) (quoting *Budget Blinds*, 536 F.3d at 255).

A motion to vacate a judgment under Rule 60(b)(6) must be brought within a reasonable time after the judgment has been entered. Fed. R. Civ. P. 60(c)(1). J&J argues that Orachev's motion, brought more than eight months after the default judgment was entered, was not filed within a reasonable time. The Court disagrees. First, because of Orachev's asserted language difficulties, he did not retain counsel immediately upon having been served with the complaint. Def. Br. at 1-2. Second, after retaining counsel, his attorney promptly contacted J&J's counsel in January 2009—five months after the default judgment was entered—to discuss a possible settlement before entering an appearance. Pl. Opp. Br. at 3. Under the circumstances, the Court does not find this delay preclusive of Rule 60(b)(6) relief. *See Delzona Corp. v. Sacks*, 265 F.2d 157, 159 (3d Cir. 1959) ("What constitutes a 'reasonable time' under Rule 60(b) is to be decided under the circumstances of each case."); c*f. Shenouda v. Mehanna,* 203 F.R.D. 166, 169 (D.N.J. 2001) (holding motion to vacate under Fed. R. Civ. P. 60(b)(4) timely despite being made almost five years after the entry of default judgment).

The Court finds the following facts justify relief: (1) Orachev, through counsel, admits liability; and (2) the default judgment entered against him is greater than *thirteen times* the amount that J&J initially sought to air the Program at Wild Bull. Orachev Cert. ¶¶ 3, 5. Orachev no doubt bears responsibility for default judgment having been entered, but the Court questions penalizing him and his business more than $31,000 in statutory damages on a $2,350 service without some inquiry into plaintiff's actual damages. *See, e.g.*, *WRS, Inc. v. Plaza Entm't, Inc.*, No. 00-2041, 2008 U.S. Dist. LEXIS 44401, at *14-15 (W.D. Pa. June 5, 2008) (to avoid "an obvious injustice," vacating $2.5 million default judgment under Rule 60(b)(6) where it was likely that the potential liability actually facing the movant was substantially less than the amount of the default judgment). And notwithstanding J&J's protestations to the contrary, it is

evident that inasmuch as the only extant issue concerns the scope of damages, no risk of lost or spoiled evidence is present.  The Court can discern no other prejudice that J&J will incur (aside from the possibility of a lesser judgment) from vacating the default judgment.

Although Rule 60(b)(6) does not provide this Court a "standardless residual discretionary power to set aside judgments," *Martinez-McBean v. Gov't of Virgin Islands*, 562 F.2d 908, 911 (3d Cir. 1977) (quoting *Mayberry v. Maroney*, 558 F.2d 1159, 1163 (3d Cir. 1977)), it is nevertheless "a grand reservoir of equitable power to do justice in a particular case." *Id.* (quoting 7 J. Moore, Federal Practice ¶ 60.27[2] at 375 (2d ed. 1975)). As a practical matter, vacatur here enables the parties to participate in counseled negotiations toward a more accurate and just amount of damages.

C.

J&J argues that if the Court grants defendants' motion, it should require them to post a bond equivalent to the amount of the default judgment to "ensure that [he] will be able to pay a [j]udgment in the future, should the Court or a jury find for [J&J]." Pl. Opp. Br. at 9.  The request is granted in part; defendants shall be required to post a bond in the amount of $15,000.00, which the Court finds will provide reasonable assurance of:  (1) defendants' continued defense of this action; and (2) defendants' ability to pay any future judgment. Defendants' failure to post such a bond **on or before Friday, August 21, 2009 will result in reinstatement of the original default judgment**.  Furthermore, a failure timely to file an answer **on or before Friday, August 21, 2009 will result in reinstatement of the original default judgment**.

III.

Defendants' motion to vacate the default judgment is granted.  Plaintiff's request for a

bond is granted in part as well.  An appropriate order will be entered.


/s/  Katharine S. Hayden

Hon. Katharine S. Hayden
United States District Judge